## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Kowanna Branche | : | |
| 131 West Maxwell Street, | : | |
| Mount Union, PA 17066 | : | |
| | : | JURY TRIAL DEMANDED |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | CASE NO. |
| National Oilwell Varco, L.P. | : | |
| d/b/a/Containment | : | |
| Solutions, Inc. | : | |
| 14489 Croghan Pike | : | |
| Mount Union, PA 17066 | : | |
| | : | |
| | : | |
| Defendant. | : | |
| | : | |

## <u>COMPLAINT</u>

Plaintiff, Kowanna Branche, by and through her undersigned counsel, files this Complaint alleging that her rights, pursuant to Title VII and Section 1981 of the Civil Rights Act, the Pregnancy Discrimination Act, the Family Medical Leave Act ("FMLA") and the Pennsylvania Human Relations Act have been violated, and avers as follows:

### I. PARTIES AND JURISDICTION

1.     Plaintiff, Kowanna Branche (hereinafter ("Plaintiff") or ("Ms. Branche"), is an adult individual residing in Mount Union, Pennsylvania with a mailing address of 131 West Maxwell Street, Mount Union, Pennsylvania 17066.

1

2.      Defendant, National Oilwell Varco, L.P., d/b/a Containment Solutions, Inc., (hereinafter ("Defendant") is a business corporation organized and existing under the laws of the Commonwealth of Pennsylvania with a prinicpal place of business at 14489 Croghan Pike, Mount Union, Pennsylvania 17066.

3.      At all times material hereto, Defendant employed Ms. Branche in Pennsylvania and qualified as Ms. Branche's employer under Title VII and Section 1981 of the Civil Rights Act, the Pregnancy Discrimination Act, the Family Medical Leave Act ("FMLA") and the Pennsylvania Human Relations Act.

4.      At all times material hereto, Defendant acted by and through their agents, servants, and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendant.

5.      Ms. Branche exhausted her administrative remedies pursuant to the Equal Employment Opportunity Act.  (See Exhibit "A," a true and correct copy of a dismissal and notice of rights issued by the Equal Employment Opportunity Commission.)

6.      This action is instituted pursuant to Title VII and Section 1981 of the Civil Rights Act, the Pregnancy Discrimination Act, the Family Medical Leave Act ("FMLA"), the Pennsylvania Human Relations Act and applicable federal law and state law.

7.      Jurisdiction is conferred by 28 U.S.C. §§ 1331 and 1343.

8.     Supplemental jurisdiction over the Plaintiff's state law claim is conferred pursuant to 28 U.S.C. § 1367.

9.     Pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), venue is properly laid in this district because Defendant conducts business in this district, and because a substantial part of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.  Ms. Branche was working for Defendant in the Middle District of Pennsylvania at the time of the illegal actions by Defendant as set forth herein.

## II. FACTS

10.     Ms. Branche was hired by Defendant on or about September 15, 2015, as an Assembly Operator at the 14489 Croghan Pike, Mt Union, Pennsylvania location.

11.     She was promoted to a Marginal Operation, fiberglass mold maker before she was terminated.

12.     Ms. Branche was pregnant from January 2019 until giving birth in October 2019. Ms. Branche found out the new baby had medical issues, difficulty breathing and not eating, so she had to be constantly alert. Ms. Branche had to take time off to take care of the baby.

3

13.     In or about March 2020, Ms. Branche applied for Intermittent FMLA, which is on a year-to-year basis.  Before she applied to take FMLA, she was using her accrued time off, vacation, etc. to be able to cover for the days that she had to call off and/or leave early due to her need to care for her baby.

14.      On or around April 20, 2020, due to the pandemic, the schools were closed and Ms. Branche had no one to care for her baby. Ms. Branche spoke to Human Resource member Doris to ask if she could take FMLA to care for her baby due to the schools being closed.

15.     Doris denied Ms. Branche's request and explained that if she did not report to work, then Defendant will be assessing points that will result in Ms. Branche's termination, or in the alternative, Ms. Branche could quit.

16.     In or about April 2020, Ms. Branche reached out to her Union Representative Rebecca for assistance. Rebecca suggested that Ms. Branche take FMLA leave under the Care Bonding Leave Act to care for her baby.

17.     The Care Bonding Leave Act states that, "mothers and fathers, including same-sex parents, can take job-protected, paid time off to bond with their newborn within the first 12 months of the child's birth."

18.     Relying on the advice of Rebecca, Ms. Branche took off work from April 2020 until July 2020. On Ms. Branche's first day back to work, she received

4

a write-up for a piece of equipment that was having an issue. Dustin, a Caucasian male was also working with Ms. Branche on this same piece of equipment, but Ms. Branche was the only one that was written up.

19.   Ms. Branche reported this situation to the Union. The Union Representative told her Dustin was not qualified and that is why he was not written up. Defendant excused Dustin from discipline while Ms. Branche was demoted. Ms. Branche asked for training to show her how to run the equipment. The training request was denied by Defendant.

20.   Ms. Branche learned that one of the Plant Managers, TJ said that, "he did not like her because of the color of her skin." Ms. Branche is one of two black females. Ms. Branche has been called "monkey, and she has been subjected to comments such as how many guys can you "f" and the "n" lazy n" by her co-workers. Ms. Branche had reported the harassment to the area supervisor, Carl Cutshall.

21.   In addition to the blatent racial and gender discrimination, Ms. Branche had also seen favoritism between Caucasian males. There was no accountability when the Caucasian males made a mistake, or did not show up for work. They did not get disciplined for these actions, while Ms. Branche did.

22.     In or about October 2020, Ms. Branche bid for a Layout job. In or about December 2020, Ms. Branche trained for one month and completed, and qualified for the Layout job. However, the Managers would not let her know when she would be able to start the new position.

23.     Ms. Branche had asked them multiple times, and she was told, "I do not know." Ms. Branche then told the managers that she would have to file a grievance if she was not called. Ms. Branche filed a grievance and her grievance was denied.

24.     Union President, Kevin, told Ms. Branche that she would be disqualified from taking the Layout job. When she asked why, Kevin then told her, "there is a lot going on." In a continuing pattern of discrimination, Ms. Branche was only allowed to work when someone was out.

25.     In or about April 2021, Brock Knable told Ms. Branche that TJ told him not to help her at all so that she could get fired. On or around May 13, 2021, Ms. Branche was disqualified from the Layout job.

26.     A few days later on or around May 19, 2021, Ms. Branche was terminated.

27.     As a direct and proximate result of the Defendant's conduct, Plaintiff sustained great economic loss, future lost earning capacity, lost opportunity, loss of

future wages and earnings, as well as emotional distress, humiliation, pain and suffering, personal injury damages and other damages as set forth below.

### III. CAUSES OF ACTION

### COUNT I
### VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT
### RACE DISCRIMINATION
### (42 U.S.C.A. § 2000e-2(a))

28.     Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

29.     Defendant took adverse action against Ms. Branche by discriminating against her as set forth above and by terminating her employment.

30.     Ms. Branche's status as an African American places her in a protected class.

31.     Ms. Branche's membership in a protected class was a motivating factor in Defendant's decision to discriminate against Ms. Branche and terminate her employment.

32.     As such, Defendant's decision to discriminate against Ms. Branche and terminate her employment is an unlawful employment practice, under 42. U.S.C. § 2000e-2(a).

33.     As a proximate result of Defendant's conduct, Ms. Branche sustained significant damages, including but not limited to: great economic loss, future lost earning capacity, lost opportunity, loss of future wages, loss of front pay, loss of

back pay, as well as emotional distress, mental anguish, humiliation, pain and suffering, consequential damages and Ms. Branche has also sustained work loss, loss of opportunity, and a permanent diminution of earning power and capacity and a claim is made therefore.

34.     As a result of the conduct of Defendant's owners/management, Ms. Branche hereby demands punitive damages.

35.     Pursuant to the Civil Rights Act of 1964, 42 U.S.C. §2000e-2(a), et seq., Ms. Branche demands attorneys' fees and court costs.

**COUNT II**
**VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT**
**RETALIATION**
**(42 U.S.C.A. § 2000e-3(a))**

36.     Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

37.     As set forth above, Ms. Branche made complaints to a supervisor about disparate treatment in the workplace and as such, Ms. Branche was engaged in protected activity under Title VII of the Civil Rights Act.

38.     Defendant took adverse action against Ms. Branche by discriminating against her and eventually terminating her employment.

39.     As set forth above, Ms. Branche's participation in protected activity was a motivating factor in Defendant's decision to terminate her employment.

40.     As such, Defendant's decision to terminate her employment is a retaliatory action prohibited by the Civil Rights Act of 1964, §704(a).

41.     As a proximate result of Defendant's conduct, Ms. Branche sustained significant damages, including but not limited to: great economic loss, future lost earning capacity, lost opportunity, loss of future wages, loss of front pay, loss of back pay, as well as emotional distress, mental anguish, humiliation, pain and suffering, consequential damages and Ms. Branche has also sustained work loss, loss of opportunity, and a permanent diminution of earning power and capacity and a claim is made therefore.

42.     As a result of the conduct of Defendant, Ms. Branche hereby demands punitive damages.

43.     Pursuant to the Civil Rights Act of 1964, §704(a), 42 U.S.C. §2000e-3(a), *et seq*., Ms. Branche demands attorneys' fees and court costs.

## COUNT III
## VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT
## DISPARATE TREATMENT

44.     Plaintiff incorporates the preceding paragraphs as if fully set forth at length herein.

45.     Plaintiff was discriminated against and/or treated differently in her employment with Defendant because, as an African-American female, she was subject to disparate treatment compared to her white male counterparts.

46.     Plaintiff's sex and race was the motivation for discrimination and harassment by Defendant.

47.     Plaintiff suffered adverse employment actions as a result of this discrimination, among other things, her employment was terminated, she was disciplined for being the victim of racial and sex discrimination and was subject to unwarranted scrutiny.

48.     These adverse employment actions-imposed burdens upon Plaintiff that would not be imposed upon other white male employees.

49.     The cumulative effect of each of the instances of Defendant's discriminatory conduct, the series of separate acts, collectively constitute one unlawful employment practice in violation of Title VII and rise to the level of severe and pervasive conduct.

50.     This willful, intentional, and unlawful racial and sex discrimination violates the laws and regulations of the United States, including without limitation, 42 U.S.C. § 2000e, *et seq*. and require the imposition of punitive damages.

**COUNT IV**
**VIOLATION OF SECTION 1981 OF THE CIVIL RIGHTS ACT**

51.     Plaintiff incorporates the preceding paragraphs as if fully set forth at length herein.

52.     Section 1981 of the Civil Rights Act prohibits discrimination on the basis of race in the making of contracts, including employment contracts.

53.    The Defendant's conduct in terminating Plaintiff's employment was based on her race.

54.    The Defendant's conduct in terminating Plaintiff's employment would have been different "but for" Plaintiff's race. Pursuant to the Section 1981 of the Civil Rights Act, Plaintiff demands attorney's fees and court costs.

## COUNT V
## VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT
## SEXUAL HARASSMENT

55.    Plaintiff incorporates the preceding paragraphs as if fully set forth at length herein.

56.    Plaintiff had to endure pervasive and regular harassment from her co-workers and was retaliated against by management because she made complaints about unlawful gender-based harassment and discrimination.

57.    This harassment detrimentally affected her in that, among other things she suffered physical pain, embarrassment, humiliation, emotional distress, and disruption to her life because of Defendant actions.

58.    The harassment by her co-worker would detrimentally affect a reasonable person for all of the reasons stated herein, as the harassment and its results would cause decreased wages, pain, drying up, lost wages, and embarrassment and humiliation to a reasonable person.

59.     The harassment of Plaintiff by Defendant's employee was willful and intentional.

60.     Despite Plaintiff complaining about these issues to Defendant, no meaningful remedial action was taken with respect to the harassment.

61.     This willful, intentional, and unlawful gender-based harassment and discrimination violates the laws and regulations of the United States, including without limitation, 42 U.S.C § 2000e, *et seq*. and requires the imposition of punitive damages.

62.     Pursuant to the Civil Rights Act of 1964, §704(a), 42 U.S.C.  §2000e-3(a), *et seq*., Plaintiff demands attorneys' fees and court costs.

## COUNT VI
## VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT
## RETALIATION

63.     Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

64.     At set forth above, Plaintiff made complaints about racial and sexual discrimination and harassing conduct in the workplace and as such, Plaintiff was engaged in protected activity under Title VII of the Civil Rights Act.

65.     Defendant took adverse action against Plaintiff by permitting the harassment to persist unabated and by terminating Plaintiff's employment.

66.     As set forth above, Plaintiff's participation in protected activity was a motivating factor in Defendant's decision to allow the continued harassment.

67.     As such, Defendant decision to promote Plaintiff's harassment is a retaliatory action prohibited by the Civil Rights Act of 1964, §704(a).

68.     As a proximate result of Defendant conduct, Plaintiff sustained significant damages, including but not limited to: great economic loss, future lost earning capacity, lost opportunity, loss of future wages, loss of front pay, loss of back pay, as well as emotional distress, mental anguish, humiliation, pain and suffering, consequential damages and Plaintiff has also sustained work loss, loss of opportunity, and a permanent diminution of earning power and capacity and a claim is made therefore.

69.     As a result of the conduct of Defendant, Plaintiff hereby demands punitive damages.

70.     Pursuant to the Civil Rights Act of 1964, §704(a), 42 U.S.C. §2000e-3(a), *et seq*., Plaintiff demands attorneys' fees and court costs.

## COUNT VII
## VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT
## DISPARATE TREATMENT

71.     Plaintiff incorporates the preceding paragraphs as if fully set forth at length herein.

72.     Plaintiff was discriminated against and/or treated differently in her employment with Defendant because, as an African American female, she was subject to disparate treatment.

73.     Plaintiff's sex and race was the motivation for discrimination and harassment by Defendant.

74.     Plaintiff suffered adverse employment actions as a result of this discrimination, among other things, her employment was terminated, she was disciplined for being the victim of racial and sexual harassment and was subject to unwarranted scrutiny.

75.     These adverse employment actions-imposed burdens upon Plaintiff that would not be imposed upon other white male employees.

76.     The cumulative effect of each of the instances of Defendant's discriminatory conduct, the series of separate acts, collectively constitute one unlawful employment practice in violation of Title VII and rise to the level of severe and pervasive conduct.

77.     This willful, intentional, and unlawful sex discrimination violates the laws and regulations of the United States, including without limitation, 42 U.S.C. § 2000e, *et seq*. and require the imposition of punitive damages.

**COUNT VIII**
**PREGNANCY DISCRIMINATION ACT**
**(42 U.S.C.A. § 2000(e)(k) et seq)**

14

78.     Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

79.     At all times material hereto, and pursuant to the Pregnancy Discrimination Act an employer may not discriminate against an employee on the basis of pregnancy, childbirth or other medical conditions.

80.     At all times material hereto, Plaintiff was pregnant and subject to the aforementioned adverse actions, as described above.

81.     Defendant's conduct in terminating and Plaintiff is adverse action, and was taken as a result of her pregnancy and, as such, constitutes a violation of the Pregnancy Discrimination Act, 42 U.S.C. §2000(e)(k), et seq.

82.     As a proximate result of Defendant's conduct, Plaintiff sustained significant damages, including but not limited to: great economic loss, future lost earning capacity, lost opportunity, loss of future wages, loss of front pay, loss of back pay, as well as emotional distress, mental anguish, humiliation, pain and suffering, consequential damages and Plaintiff has also sustained work loss, loss of opportunity, and a permanent diminution of her earning power and capacity and a claim is made therefore.

83.     As a result of the conduct of Defendant's owners/management, Plaintiff hereby demands punitive damages.

84.     Pursuant to the Pregnancy Discrimination Act, Plaintiff demands attorneys' fees and court costs.

## COUNT IX
## VIOLATION OF FMLA—INTERFERENCE
### (29 U.S.C. §2601 et seq.)

85.     Plaintiff incorporates the preceding paragraphs as if fully set forth at length herein.

86.     As set forth above, Plaintiff was entitled to medical leave pursuant to the FMLA, 29 U.S.C. §2601, et seq.

87.     As described above, Defendant interfered with, restrained and denied Plaintiff's exercise and/or attempts to exercise her rights under the Family and Medical Leave Act.

88.     As a proximate result of Defendant's conduct, Plaintiff sustained significant damages, including but not limited to: great economic loss, future lost earning capacity, lost opportunity, loss of future wages, loss of front pay, loss of back pay, as well as emotional distress, mental anguish, humiliation, pain and suffering, consequential damages and Plaintiff has also sustained work loss, loss of opportunity, and a permanent diminution of his earning power and capacity and a claim is made therefore.

89.     As a result of the conduct of Defendants' owners/management, Plaintiff hereby demands punitive and/or liquidated damages.

90.    Pursuant to the Family and Medical Leave Act of 1993, 29 U.S.C.

§2601, et seq Plaintiff demands attorney's fees and court costs.

## COUNT X
## VIOLATION OF FMLA
## RETALIATION
## (29 U.S.C. §2601 et seq.)

91.    Plaintiff incorporates the preceding paragraphs as if fully set forth at

length herein.

92.    As set forth above, Plaintiff was entitled to and qualified for medical

leave pursuant to the FMLA, 29 U.S.C. §2601, et seq.

93.    Defendant's motivation in terminating Plaintiff's employment was

based, in part, upon her taking permissible FMLA leave.

94.    As a proximate result of Defendant's conduct, Plaintiff sustained

significant damages, including but not limited to: great economic loss, future lost

earning capacity, lost opportunity, loss of future wages, loss of front pay, loss of

back pay, as well as emotional distress, mental anguish, humiliation, pain and

suffering, consequential damages and Plaintiff has also sustained work loss, loss of

opportunity, and a permanent diminution of his earning power and capacity and a

claim is made therefore.

95.    As a result of the conduct of Defendant's owners/management,

Plaintiff hereby demands punitive and/or liquidated damages.

17

96.     Pursuant to the Family and Medical Leave Act of 1993, 29 U.S.C.

§2601, et seq Plaintiff demands attorneys' fees and court costs.

**COUNT XI**
**VIOLATION OF THE PENNSYLVANIA HUMAN RELATIONS ACT**
**RACE DISCRIMINATION**
**(43 P.S. § 955)**

97.     Plaintiff incorporates the preceding paragraphs as if set forth more

fully at length herein.

98.     At all times material hereto, and pursuant to the Pennsylvania Human

Relations Act, 43 P.S. § 951, et seq., an employer may not discriminate against an

employee based on race.

99.     Plaintiff is a qualified employee and person within the definition of

Pennsylvania Human Relations Act, 43 P.S. § 951, et seq.

100.    Defendant is an "employer" and thereby subject to the strictures of the

Pennsylvania Human Relations Act, 43 P.S. § 951, et seq.

101.    Defendant's conduct in discriminating against Plaintiff terminating

her employment are adverse employment actions, were taken as a result of her race

and constitute a violation of the Pennsylvania Human Relations Act, 43 P.S. § 951,

et seq.

102.    As a proximate result of Defendant's conduct, Plaintiff sustained

significant damages, including but not limited to: great economic loss, future lost

earning capacity, lost opportunity, loss of future wages, loss of front pay, loss of

back pay, as well as emotional distress, mental anguish, humiliation, pain and suffering, consequential damages and Plaintiff has also sustained work loss, loss of opportunity, and a permanent diminution of her earning power and capacity and a claim is made therefore.

103.   Pursuant to the Pennsylvania Human Relations Act, 43 P.S. § 951, et seq., Plaintiff demands attorney's fees and court costs.

## COUNT XII
## VIOLATION OF THE PENNSYLVANIA HUMAN RELATIONS ACT

104.   Plaintiff incorporates all the preceding paragraphs as if they were set forth at length herein.

105.   Based on the foregoing, Plaintiff alleges that Defendant violated the Pennsylvania Human Relations Act ("PHRA") by subjecting her to discrimination on the basis of her sex.

106.   Plaintiff further alleges that Defendant violated the PHRA by retaliating against Plaintiff for her making complaints of sexual harassment and discrimination.

107.   Defendant's conduct caused Plaintiff to sustained significant damages, including but not limited to: great economic loss, future lost earning capacity, lost opportunity, loss of future wages, loss of front pay, loss of back pay, as well as emotional distress, mental anguish, humiliation, pain and suffering, consequential damages and Plaintiff has also sustained work loss, loss of opportunity, and a

permanent diminution of her earning power and capacity and a claim is made

therefore.

108.   As a result of the conduct of Defendant, Plaintiff hereby demands

punitive damages.

109.   Pursuant to the Pennsylvania Human Relations Act, 43 P.S. § 951, *et
seq.* Plaintiff demands attorneys' fees and court costs.

## IV. RELIEF REQUESTED

**WHEREFORE,** Plaintiff, Kowanna Branche, demands judgment in her

favor and against the Defendant in an amount in excess of $150,000.00 together

with:

A.   Reinstatement of position with a comparable salary and benefits
     including, medical, vacation and sick time, in addition to any other
     associated employee benefits to which she may be entitled.

B.   Compensatory damages, including but not limited to: back pay, front
     pay, past lost wages, future lost wages, lost pay increases, lost pay
     incentives, lost opportunity, lost benefits, lost future earning capacity,
     injury to reputation, mental and emotional distress, pain and suffering;

C.   Punitive damages;

D.   Attorney's fees and costs of suit;

E.   Reimbursement for medical bills;

F.      Reimbursement for Payment of State Payroll Overpayment;

G.      Interest, delay damages; and,

H.      Any other further relief this Court deems just proper and equitable.

Date:  10/05/2022                    **LAW OFFICES OF ERIC A. SHORE, P.C.**

                                     BY: *_/s/ Mary LeMieux-Fillery_*
                                     **MARY LEMIEUX-FILLERY, ESQUIRE**
                                     **(Pa Id. No.: 312785)**
                                     Two Penn Center, Suite 1240
                                     1500 John F. Kennedy Boulevard
                                     Philadelphia, PA 19102
                                     Tel.: (267) 546-0132
                                     Fax: (215) 944-6124
                                     Email: maryf@ericshore.com
                                     *Attorneys for Plaintiff, Kowanna Branche*

**VERIFICATION**

I hereby verify that the statements contained in this complaint are true and correct to the best of my knowledge, information, and belief. I understand that false statements herein are made subject to the penalties of 18 P.A.C.S. § 4904, relating to unsworn falsification to authorities.

*10/05/2022*
_____
(Date Signed)

Kowanna Branche